# 2003 DTA 108

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA-MAYAGUEZ**
**PANEL I**

DEPARTAMENTO DE LA FAMILIA
Demandante-Apelado

v.

CARMEN M. BARBOSA ROBLES
Demandada-Apelante

Núm. KLAN-03-00205

San Juan, Puerto Rico, a 20 de junio de 2003

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

Feliciano Acevedo, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Carmen M. Barbosa Robles (la promovida o apelante) solicita que revisemos la Sentencia emitida el 10 de septiembre de 2002 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). En la misma se relevó al Departamento de la Familia (Departamento) de realizar esfuerzos razonables conforme establece el Art. 46 de la Ley Núm. 342 de 16 de diciembre de 1999, conocida como Ley para el Amparo de Menores del Siglo XXI, 8 L.P.R.A. § 443k, para reunificar a la apelante con sus dos hijos menores de edad, y entregó la custodia legal permanente de éstos al Departamento. La apelante arguye que el foro de instancia erró al aplicar dicho Art. 46 y en consecuencia violentó la política pública al no promover los mejores intereses de los menores.

Con el beneficio de la comparecencia del Departamento de la Familia y el Procurador Especial, resolvemos.

## I

El 9 de marzo de 2001 se presentó una Petición al amparo de la Ley Núm. 342, *supra*, contra la apelante. En la misma se alegaba que existía una situación de emergencia que ponía en riesgo la seguridad y bienestar de

dos menores, hijos de la promovida. En específico, la trabajadora social del Departamento de la Familia, Ana Luisa Anavitate Quinta, adujo que:

*"Existen claros indicadores [de] negligencia por parte de la madre al permitir que los menores vivan en condiciones insalubres donde no hay agua ni luz, basura, ropa tirada por todas parte[s], mal hedor. Hay negligencia al madre dejar menores al intemperie como castigo. Esto se ha compertido (sic) en un patrón de diciplina (sic)."*

Ese mismo día, el Tribunal de Primera Instancia, Sala Municipal de Cabo Rojo, emitió Resolución y Orden requiriendo que los menores se colocaran bajo la custodia provisional del Departamento. La promovida, pese a haberse presentado inicialmente ante el Tribunal, se retiró y no compareció a la vista donde se decidió la custodia provisional de los menores.

Se desprende de los autos ante nos que el 29 de marzo de 2001, la promovida intentó presentar una moción por derecho propio en la cual informaba al TPI que se trasladaría al Estado de Ohio en los Estados Unidos. En la vista de primera comparecencia celebrada el 24 de abril de 2002, se discutió la moción presentada por la promovida, pero el Tribunal hizo constar que la misma no obraba en el expediente original, pues fue devuelta por falta de sellos. A la vista no compareció la promovida, ni su representante legal. Por el contrario, el padre biológico sí compareció. Luego de escuchar el testimonio de Ana Luisa Anavitate, persona que suscribió la Petición, el TPI admitió el Informe de Intervención del 20 de marzo de 2001, el Informe de 13 de marzo de 2001, la carta de la promovida de 3 de abril de 2001, el Informe de 4 de abril de 2001 y los testimonios de las trabajadoras sociales Griselle Ortiz, Elaine Brown y Lizandra Jiménez. Evaluada la prueba, el TPI decretó que la remoción de la custodia fue conforme a derecho y concedió la custodia legal provisional de los menores al Departamento de la Familia. Finalmente, en dicha vista y a petición de la Procuradora de Familia para casos de Maltrato de Menores, el TPI ordenó el traslado del caso a la Sala Superior de San Juan, puesto que los recursos custodios residían en dicha región judicial. █

La promovida tampoco compareció a los procedimientos llevados a cabo en la Sala Superior de San Juan hasta el 27 de noviembre de 2001, cuando se personó sin representación legal. En dicha fecha, el Tribunal autorizó las relaciones materno-filiales. Luego de varios trámites, el caso fue devuelto a la Sala Superior de Mayagüez en la cual se celebró vista el 30 de abril de 2002. En la vista, las partes expusieron sus posiciones en torno al plan de servicios para la promovida. La representación legal de ésta solicitó se le permitiera entrar en un plan de servicios, pero la Procuradora se opuso, pues la remoción se había efectuado hacía más de un año y la promovida no había aprovechado el momento para entrar a un plan de servicios. Igualmente, el Departamento de la Familia se opuso al requerimiento de un plan de servicios. Sin emitir decisión alguna, el Tribunal citó para juicio en su fondo para el 21 de mayo de 2002.

En la vista, el TPI recibió prueba de ambas partes para determinar si el Departamento debía dar servicios a la promovida o si por el contrario se le relevaba de realizar los mismos. Luego, ambas partes presentaron sus respectivos Memorandos de Derechos, tras lo que el TPI dictó la Sentencia apelada.

En la Sentencia, el TPI señala que la promovida abandonó la jurisdicción a sabiendas del procedimiento judicial que se llevaba a cabo en su contra y de la citación que tenía. Además, indicó que conocía de las consecuencias de sus actos. Estableció que el Departamento presentó prueba clara y convincente, no controvertida, sobre los servicios que recibió la promovida de dicha agencia desde el año 1994 hasta el 2001. Entre las gestiones probadas por el Departamento se encuentran orientaciones sobre cómo conseguir empleo y la gestión de una vivienda para la promovida, pero que ésta luego perdió. Además de gestiones para corregir el problema de carencia de agua y servicio eléctrico en su hogar. De otra parte, la agencia también ofreció servicios de salud mental a través de los cuales le diagnosticaron desorden de depresión mayor maníaca, bipolar. Posteriormente a ello es que ocurre la remoción de los menores y que la promovida sale de la

jurisdicción sin informar fecha de regreso.

El TPI estableció que la promovida siguió un patrón de incumplimiento con el Tribunal y con el Departamento de la Familia, lo cual también redundó en incumplimiento con sus hijos. Durante su testimonio, el cual fue descrito como impreciso por el Tribunal, no pudo presentar evidencia sobre tratamiento médico en salud mental con posterioridad a su salida de Puerto Rico. De acuerdo al Tribunal, la promovida demostró ausencia de compromiso para con los deberes y responsabilidades de un custodio en menosprecio de sus actuaciones maltratantes hacia los menores.

Así, pues, el foro *a quo* determinó que en el caso de marras no había justa causa para prorrogar el término de seis (6) meses establecido en la Ley Núm. 342, *supra*, para que el Departamento de la Familia realice esfuerzos razonables dirigidos a reunificar la familia. De este modo, ordenó el cierre y archivo del caso por haber relevado al Departamento de realizar los esfuerzos razonables y entregó la custodia legal permanente a dicha agencia.

En desacuerdo, la promovida presentó ante nos el recurso de epígrafe en el cual alega que:

*"Erró el Tribunal en la aplicación del Artículo 46 de la Ley 342 del 16 de diciembre de 1999, 8 LPRA, sección 441, y en consecuencia ese error violenta la política pública de dicha ley en su Artículo 3, ya que no promueve el mejor bienestar de los menores."*

## II

*"La Ley Núm. 342, supra, es de aplicación en los casos donde el Departamento de la Familia solicita la privación, restricción o suspensión de la patria potestad o custodia dentro de procedimientos incoados para amparar a un menor víctima de maltrato o negligencia. Art. 45 de la Ley 342, supra."* Pena v. Pena, **2000 J.T.S. 200**. En la misma, nuestra Asamblea Legislativa ha establecido, una vez más, que la política pública del Estado relacionada con los menores se propone garantizar y promover el mejor bienestar del menor.

Nuestro Tribunal Supremo reiteró que la política pública establecida en la referida ley reconoce como prioridad el mejor bienestar del menor. Por lo cual, *"el derecho de los menores a ser protegidos del maltrato, prevalecerá sobre la unidad familiar cuando ello sea necesario para salvaguardar el mejor bienestar del menor."* Departamento de la Familia v. Wandaliz Ramos, **2003 J.T.S. 38**.

Al interpretar integralmente las disposiciones de la Ley Núm. 342, *supra*, debemos hacerlo garantizando el mejor interés del menor, reconociendo que la inestabilidad y falta de permanencia son contrarias a ello. La intención legislativa al aprobar la referida ley es: 1) proveer la privación de patria potestad en el menor término posible; 2) eliminar la necesidad de que los menores tengan que esperar durante un tiempo irrazonable que sus padres corrijan las condiciones que les impiden regresar a sus familias; y 3) promover la adopción de menores por familias estables; todo ello con el fin ulterior y principal de garantizar el mejor interés del menor. Art. 3 de la Ley para el Amparo a Menores en el Siglo XXI, *supra*.

La acción judicial en los casos de alegado maltrato de menores se realiza contra el custodio que pone en peligro la seguridad y el bienestar del menor. A dicho custodio, la Ley garantiza concederle debido procedimiento de ley. El mismo se concretiza con la notificación y oportunidad de participación en los procedimientos judiciales posteriores a la toma de la custodia de emergencia. 8 L.P.R.A. § 443d.

Posterior a un procedimiento de custodia de emergencia, el tribunal tiene que revisar la misma y determinar las medidas a tomar. Entre las medidas que puede tomar el tribunal se encuentra la privación de custodia en forma provisional al padre, madre o persona responsable del menor por un lapso no mayor de tres (3) meses, prorrogable por justa causa hasta seis (6) meses. El tribunal también podrá otorgar la custodia legal al

Departamento de la Familia quien determinará sobre quién recaerá la custodia *de facto*. 8 L.P.R.A. § 443a.

Conforme al Art. 38 de la Ley Núm. 342, *supra*, 8 L.P.R.A. § 443c, la notificación a la parte promovida debe advertirle de las consecuencias de su incomparecencia a la vista de ratificación. La Ley establece que la incomparecencia a la vista de ratificación permitiría que el Tribunal ordene la anotación de la rebeldía y decrete la privación de la custodia o patria potestad sin citarle, ni oírle. Además, dicho articulado dispone que el incumplimiento del promovido con el plan de servicios en un período de seis (6) meses a partir de la privación de la custodia provisional, conllevará la privación de la patria potestad, a menos que dicho incumplimiento no sea atribuible al promovido.

Asimismo, establece el Art. 38, *supra*, que el Departamento de la Familia deberá informar al Tribunal, en cada caso, de los esfuerzos razonables para preservar la unidad familiar que ha realizado previos a la remoción de los menores de su hogar. También es deber del Departamento de la Familia informar de los esfuerzos razonables hechos con posterioridad a la remoción para facilitar el regreso de los menores al hogar.

No obstante, la Ley exime al Departamento de la Familia de realizar esfuerzos razonables dirigidos a la reunificación familiar en diversas situaciones, reconociendo que la consideración principal siempre ha de ser el mejor interés del menor. El Art. 46 de la Ley Núm. 342, *supra*, 8 L.P.R.A. § 443k, establece que no se harán esfuerzos razonables para reunir a los menores removidos con su padre o madre cuando, entre otras cosas, los esfuerzos para cambiar el comportamiento del padre a quien se le privó de la custodia no han sido exitosos luego de seis (6) meses de haberse iniciado los mismos; o cuando el padre a quien se le privó de la custodia ha manifestado no tener interés en la reunificación con los menores.

De los autos del caso se destaca que la promovida, sabiendo de la vista a celebrarse para determinar si existía o no una situación de emergencia que ameritara la remoción de los menores del hogar, se personó en el Tribunal, pero se retiró sin comparecer a la vista. Por lo cual, en ausencia de ésta se decretó la remoción de los menores del hogar de la promovida. Se desprende de los autos que la promovida fue notificada de los procedimientos posteriores a la remoción de emergencia y que incluso compareció al primer señalamiento para la ratificación de custodia. Sin embargo, en dicha ocasión, por no contar con representación legal, el Tribunal aplazó la vista para darle la oportunidad de contratar abogado. Aún estando advertida del señalamiento, no compareció al mismo. Más aún, decidió abandonar la jurisdicción con pleno conocimiento del procedimiento judicial que encaraba.

De otra parte, de los autos se desprende que la promovida estuvo durante un tiempo considerablemente amplio previo a la remoción, recibiendo servicios del Departamento de la Familia dirigidos a mejorar su conducta. Dichos servicios no se limitaron a un período de seis (6) meses, sino que se extendieron por años, de acuerdo a la prueba presentada por el Departamento de la Familia ante el TPI desde el 1994, y en particular, según el Informe rendido por el Departamento de la Familia de 12 de marzo de 2001, la intervención de la Trabajadora Social a cargo de esta etapa del caso comenzó en agosto de 2000. Sin embargo, los mismos no fueron efectivos, al punto que sus actuaciones hacia los menores provocaron la privación de la custodia. Luego de la remoción, el Departamento intervino con la promovida, pero al ésta decidir, sin autorización, ni consulta con el Tribunal, salir de la jurisdicción, todo plan de servicios quedó interrumpido.

La propia Ley Núm. 342, *supra*, establece que un padre incurre en abandono de un menor cuando: (1) no se comunica con éste durante un período de por lo menos tres (3) meses; (2) no participa en un plan o programa de servicios para reunificar la familia; (3) no responde a la notificación de vista de protección de los menores; (4) se encuentra al menor en circunstancias que hagan imposible reconocer la identidad de su padre o persona custodia o se ignore su paradero.

De otra parte, el tribunal puede, basado en evidencia clara y convincente que demuestre que la privación

promueve el mejor interés del menor, privar de la patria potestad a tenor con el Art. 49 de la Ley Núm. 342, *supra*, 8 L.P.R.A. § 443n, cuando:

*"(1) El padre y/o la madre no está dispuesto o es incapaz de tomar responsabilidad y proteger al menor de riesgos a su salud e integridad física, mental, emocional y/o moral y esas circunstancias no cambiarán dentro de un período de seis (6) meses de haberse iniciado los procedimientos según la evidencia presentada en el caso;*

*(2) **el menor ha sido abandonado;***

*(3) el padre y/o la madre no ha hecho esfuerzos de buena fe para rehabilitarse y reunirse con el menor;*

*(4) el menor ha permanecido en un hogar de crianza o sustituto durante doce (12) de los veintidós (22) meses más recientes, o*

*(5) no hay que hacer esfuerzos razonables por darse cualesquiera de las circunstancias dispuestas en la sec. 443k de este título [Art. 46]."*

En el caso de marras, la promovida salió de la jurisdicción del Tribunal dejando al descubierto el procedimiento judicial, no respondió de las vistas señaladas y citadas y no participó del plan establecido por el Departamento de la Familia para promover la reintegración familiar. De esta manera, abandonó a los menores y el procedimiento judicial, relevando al Departamento de realizar esfuerzos razonables para la reintegración familiar.

Finalmente, debemos reiterar que en los casos de custodia, el criterio decisivo no es el derecho de los padres a relacionarse con el menor, sino el mejor bienestar del menor. *Maldonado Mir v. Burris*, **2001 J.T.S. 72**. La promovida relegó ese derecho de relacionarse con sus hijos al salir de la jurisdicción y abandonar no sólo el proceso judicial, sino a los menores también.

### III

A la luz de los fundamentos antes vertidos, se modifica la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, de 10 de septiembre de 2002, a los únicos fines de revocar el archivo del caso hasta la celebración de la vista de permanencia conforme el Art. 46, *supra*. Se confirma en todos sus demás aspectos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 108**

**1.** Minuta de 24 de abril de 2001, Anejo XII, Apéndice Escrito de Apelación.